J. D. Nichols Stores, Inc., Appellant, *v.* Lipschutz et al., Appellees.

(No. 349—Decided February 28, 1963.)

*Messrs. Lovell & Woodmansee*, for appellant.
*Messrs. Maddox & Hire*, for appellee.

CRAWFORD, J.  In this appeal on questions of law and fact, plaintiff, appellant herein, seeks to enjoin the defendants, appellees herein, from leasing the storeroom at 147 East Court Street, Washington C. H., Ohio, to Dunhill's, Inc., for the operation of a men's specialty store.  Plaintiff is engaged in the same type of business and operated at the above premises as lessee of the defendants from April 1, 1955, until April 1, 1962.  Prior to plaintiff's occupancy, the defendants had operated a similar business at the same location under the name of Levy's.

Plaintiff bases its present suit upon a document executed by the defendants on March 24, 1955, entitled ''Bill of Sale.'' The pertinent provisions of that document are as follows:

''Know all men by these presents, that Paul Lipschutz and Mae Lipschutz, husband and wife, for the consideration of $45,000, paid by J. D. Nichols Stores, Inc., an Ohio corporation, the grantee, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, transfer and deliver unto the said grantee, its successors and assigns, the following described goods and chattels and effects, to wit: all stock in trade, furniture and fixtures now owned and used by the said Paul Lip-

schutz and Mae Lipschutz, in connection with their men's furnishing store, known as Levy Clothing Store at No. 147 East Court Street, Washington C. H., Ohio, excepting outstanding book accounts, bills receivable and claims for money. An inventory of said stock of merchandise, store furniture and fixtures has been made and is attached hereto and made a part hereof.

"Also the good will established by said grantors in connection with said business aforesaid. Said grantors agree that they will not, as individuals, either directly or indirectly, engage in the business of men's furnishings in said city of Washington, for a period of ten years from and after the date hereof, and will not come into competition with said grantee, and will not interfere in any manner with the business, trade, good will or customers of said grantee.

"It is the purpose of this instrument to convey to said grantee all stock in trade, fixtures and personal property now owned and used by said grantors, in connection with its business, whether or not specifically described herein, including the book accounts, bills receivable, money claims, and excepting such fixtures as are attached to and belong to the building occupied grantee."

On the same day, March 24, 1955, the plaintiff and the defendants executed another document entitled "Contract for Sale of Stock in Trade and Fixtures," the pertinent provisions thereof being as follows:

"* * * and concurrently therewith [*i. e.*, the securing of payment for a stipulated price], the seller shall execute and deliver to the purchaser a bill of sale for said property, free and clear of all encumbrances and claims of all creditors * * *.

"It is further agreed and understood that the seller owns the building or business room at No. 147 East Court Street, said city, and the seller agrees to enter into an agreement of lease with purchaser for said premises for a term of five years at an annual rental of four thousand eight hundred ($4,800.00) dollars, payable in monthly instalments of $400, on the first day of each and every month, in advance, with an option to renew said lease upon like terms and conditions for an additional term of five years * * *. Lease and terms thereof to be submitted to purchaser concurrently with the closing of this transaction.

"In consideration of the foregoing and as an inducement to the purchaser to pay the purchase price aforesaid, the seller hereby agrees that he will not, directly or indirectly, engage in said men's furnishing business in the city of Washington, for a period of ten years from and after the date hereof, and that he will not, directly or indirectly, individually, or in connection with any partnership or corporation come into competition with the purchaser and will not interfere in any manner with the business, trade, good will or customers of the purchaser."

Also, on the same day, March 24, 1955, the parties entered into a lease of the premises in question for a term of five years, beginning April 1, 1955, at an annual rental of $4,800, payable monthly, with an option in plaintiff to renew the same for a further term of five years.

Absent from the lease is any provision such as contained in the other two documents against competition or interference with plaintiff's business.

The lease does contain the following provision: "That lessee intends using said premises for a men's furnishing store * * *."

Near the end of the first five-year term, plaintiff gave timely notice to defendants that it would not exercise its option to renew the lease and asked instead for a one-year lease at a reduced rental. A one-year lease was entered into. It was followed by a second one-year lease, the term of which expired on April 1, 1962. Neither of these one-year leases contained any option for renewal. Neither of them contained any provision against competition or interference with plaintiff's business.

Prior to the end of the second one-year lease, defendants notified plaintiff that they would not enter into any additional lease with it and demanded possession of the premises.

On November 7, 1961, defendants entered into a lease for the same premises with Dunhill's, Inc., which contains these provisions:

"Lessors agree not to lease any adjoining rooms which they may own, to be used exclusively for a men's clothing and furnishing store" and "The lessee intends using said premises for a men's clothing and furnishing store and the sale of kindred items customarily and usually sold in men's clothing and furnishing stores * * *."

The plaintiff concedes that defendants have a right to lease their storeroom to others, but challenges their right to lease it to a business competing with plaintiff's, claiming that is a violation of the provisions of the contract for sale and the bill of sale.

Defendants claim that inasmuch as plaintiff elected not to renew the original lease for an additional term of five years, it no longer has a right to prevent defendants from leasing their premises to whomever they please and for whatever kind of business they choose. Defendants further contend that it would be no violation of any of their promises or agreements, even if they are still in effect, to lease the premises to a third party in whose business they have no direct financial interest.

The promises made by defendants in the agreement to sell and bill of sale to refrain from competition and interference with plaintiff's business were clearly intended to continue in full force and effect as provided therein for a period of ten years from March 24, 1955. There was adequate consideration for such promises in those documents. The period of non-competition was not made co-extensive with the five-year period of the original lease beginning April 1, 1955, and its possible renewal, but for a definite period of ten years beginning March 24, 1955.

The contract for sale and bill of sale were not part of the lease nor was the lease part of either of them. Although the contract for sale included an agreement to make the lease, these three documents contain separate and distinct agreements, and the mutual promises contained in each furnished adequate consideration on both sides.

The existing good will, which was part of defendants' own prior business, was one of the important things of value purchased and paid for by plaintiff on March 24, 1955, as evidenced by the bill of sale. It was in connection with the good will, and in order to make effective its transfer, that the promise not to compete or interfere was made. Defendants sold ''the good will established by said grantors in connection with said business aforesaid.'' The sale of the business, including good will, was not declared to be dependent upon the lease, even though both were provided for in the contract of sale.

It is argued that these three documents executed simul-

taneously on March 24, 1955, were part of one transaction and combined to make up the complete agreement between the parties. 11 Ohio Jurisprudence (2d), 394, 395, 396, Contracts, Sections 149, 150. Plaintiff contends that this principle does not apply because there is no ambiguity in any of the documents.

But let us suppose that the principle does apply, and that the three agreements are to be construed together as parts of a single transaction. It would then appear, with at least equal certainty, that the several promises and provisions are all to be given effect as clearly expressed, and that the parties were dealing with two different periods of time, each carefully defined, and not coextensive. Even if the three instruments, executed on the same day, are to be considered parts of one total agreement, still the court cannot change the two separate periods of time agreed upon so as to make them coextensive. To do so would be to rewrite the agreement made by the parties.

If the instruments are to be considered as one, the possibility of inadvertence in providing two different periods of time would be lessened rather than increased. Besides, if the non-competition was to be coextensive with the period of plaintiff's occupancy under the lease, there would be no need whatever for such a provision as applied to these particular premises.

Plaintiff invokes the principle that in cases of uncertainty or ambiguity, the instrument must be construed most strongly against the party who drew it, pointing out that these were all drawn by defendants' attorney. However, we find no uncertainty or ambiguity.

It is contended by the defendants that the failure of the plaintiff to exercise its option of renewal of the original lease for an additional five-year term was somehow a breach of its agreement and waived or forfeited its right to further observance of defendants' period of abstinence from competition, interference, etc. This argument is not valid. The renewal option was plaintiff's privilege, not its duty. To hold that plaintiff was obligated to renew the lease would be to deny its right of election and would, in that respect, be a rewriting of the lease which the parties made.

Defendants' lease of the premises at 147 East Court Street to Dunhill's, Inc., for the operation of a men's furnishing store

unquestionably constitutes an interference with plaintiff's business. The evidence indicates that the closing of another such store in the city was noticeably beneficial to plaintiff. The advent of another, particularly in the identical location so long occupied by plaintiff and previously occupied by the lessors, is almost certain to have an adverse effect.

Cases of interest from other jurisdictions have been cited by both sides. Always bearing in mind the importance of the wording of each particular agreement, some of these cases shed a certain amount of light.

In *Dowd* v. *Bryce*, 95 Cal. App. (2d), 644, 213 P. (2d), 500, 14 A. L. R. (2d), 1329, the sellers of certain real estate along with the business operated thereon, including good will, agreed that they would not directly or indirectly engage in similar businesses for a specified period within a radius of two miles, nor knowingly sell any land within the area to a purchaser contemplating businesses of the same nature. The court held it to be a violation of this agreement to lease a parcel of ground within the area to one who admittedly intended to operate thereon a similar business. The reviewing court quoted with approval this language of the trial court:

" 'When a seller lawfully agrees not to directly or indirectly compete with his buyer, he may be said to be indirectly competing when he leases his land within the restricted territory for a consideration, knowing at the time of the lease that it is to be and will be used for the same kind of business which his purchaser bought from him in competition with the purchaser. This is for the reason that he has control of the opportunity to compete and desires a profit therefor in the form of rental for his lease, as his lessee can only pay rent out of the profits made in competing with the purchaser from his lessor.' "

The court continued:

"Therefore, Dowd, by his very act of leasing to a party whom he knows is going to compete, under the circumstances related, would be considered guilty of bad faith. By his very act of leasing he creates competition. His act is one link in the chain which creates the very competition which it was the object of the clause in question to prevent."

In *Langenback* v. *Mays*, 207 Ga., 156, 60 S. E. (2d), 240, the seller of a tourist camp agreed not to use his adjacent acreage

for competitive purposes. He was enjoined from leasing such land for use as a competing tourist camp.

On the other hand, the court held in *McKeighan Wachter Co.* v. *Swanson*, 138 Wash., 682, 245 P., 10, that the seller of a garage business did not violate his covenant not to re-engage in such business by loaning money to his son to enable him to start the garage business with another, and receiving rent for the use of the building in which such business was conducted.

It appears to be generally held that there is no breach of such an agreement by one who merely lends money to a person engaged in a similar business.

In *Ericson* v. *Jayette*, 149 Fla., 82, 5 So. (2d), 453, the seller of a restaurant business agreed not to engage either directly or indirectly in similar business within a specified time and place. He leased a building to one who operated a competing restaurant. In a suit to enforce the agreement the court found the evidence inadequate to support an injunction. The comment is made in the annotation in 14 A. L. R. (2d), 1333, at 1334, that the case is of little value as an authority because of the paucity of the facts stated.

During the oral arguments defendants' counsel asserted that there is no evidence that plaintiff is now operating a men's clothing store in Washington Court House. When the pleadings were filed it was alleged and admitted that they were doing so, then at 147 East Court Street. The testimony before us includes the statement of J. D. Nichols, president of the plaintiff corporation, that it was then operating such a store at another location in Washington Court House. This statement is uncontradicted and there is no evidence that the situation has ever changed.

The evidence establishes plaintiff's right under the contract of sale and bill of sale executed on March 24, 1955, to be protected for a period of ten years thereafter from the competition of a similar business operating in the same premises of the defendants which plaintiff had previously leased and occupied and the injunction will issue as prayed for.

*Injunction granted.*

KERNS, P. J., and SHERER, J., concur.

(Decided March 22, 1963.)

On Application for reconsideration.

*Per Curiam.* Defendants have made application for reconsideration because under our decision they are to be restrained from leasing their premises to Dunhill's, Inc., which is not a party to this suit.

We merely followed the language of the petition and granted the relief prayed for. We tried to make it clear, however, that we believe the defendants have no right, under the engagements which they entered into, to lease these premises to any competitor of the plaintiff.

The fact that a particular lessee was named does not change the rights of the parties. Our judgment operates between the parties of whom the court has jurisdiction. And it is the parties defendant and not Dunhill's, Inc., who make the present application.

The application for reconsideration will be denied and the previous judgment adhered to.

*Application denied.*

Kerns, P. J., Crawford and Sherer, JJ., concur.