[Civ. No. 26413.   Second Dist., Div. Four.   Mar. 1, 1963.]

WILLIAM P. HARRISON et al., Plaintiffs and Respondents, v. HOMER COOK, Defendant and Appellant.

Dunlap, Holmes, Ross & Woodson for Defendant and Appellant.

Frank W. Doherty for Plaintiffs and Respondents.

BISHOP, J. pro tem.*—Defendant Homer Cook has appealed from that provision of the judgment that denied him any relief on his cross-complaint and also from those provi-

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

sions of the judgment that tied his hands so that in the future he can never make any use of the five promissory notes that were the main basis of his cross-complaint. We have concluded that because of his breach of the contract of which the promissory notes were an integral part, the judgment was proper and should be affirmed.

This is a judgment roll appeal and we gather the facts partly from those agreed upon in the pretrial statement, mostly from the 44 findings of fact with which the trial court rendered its decision. It appears that defendant Homer Cook for a period of some 36 years was identified with the Cook-Nichols Company, which was at first a partnership, then a corporation. It was engaged in the electrical wholesale supply business in the City of Pasadena and defendant Homer Cook was first a partner; then, sometime before 1957 he became the owner of substantially all the common stock of the company.

In September of 1957 defendant Homer Cook entered into a contract with six of the plaintiffs whereby he sold, they bought, all his stock in the Cook-Nichols Company. We need not note how much stock each of the six acquired, but for it they, all told, agreed to pay the defendant $40,000 and to give him five promissory installment notes, totalling $75,000 of which each bore one or two signatures of the plaintiffs as makers. Two of the plaintiffs were to sign one of the notes as guarantors. We are especially interested on appeal in the following provision of the contract:

"16. Agreement not to Compete. Cook agrees that so long as Buyers are not in default of any of the terms of this agreement, that he shall not establish or conduct or lend his name to any business organization doing business in Los Angeles, Orange, San Bernardino, Riverside or Ventura Counties which is competing or attempting to compete with any line of business now engaged in by the Company."

The sale was consummated September 25, and the plaintiffs who were to acquire the stock of Cook-Nichols Company did so and undertook operation of the company. The promissory notes and a collateral security agreement were also executed on that day. For three months thereafter several of those who had previously been employed by the company continued in its service. Among them were Wilbur Cook, son of defendant, and Patricia Cook, his son's wife. In October, Wilbur asked his father to loan him $20,000 to start up his own business and that sum was promised him. In December he advised his father, the defendant, that he was going to open up a business

in competition with Cook-Nichols Company at a location about 2 blocks from its site and his father loaned him the promised $20,000 for the purpose early the following January. The new business, named Pasadena Wholesale Electric, fared well. One after another of Cook-Nichols' trusted employees shifted their loyalty to the new venture, taking with them their knowledge of their old practices, lines, and customers. Wilbur was enabled to secure merchandise that he wanted from the Anaconda Company by the action of his father, the defendant, in guaranteeing the payment of the account. As the fortune of Pasadena Wholesale Electric steadily increased, that of Cook-Nichols steadily declined, with the inevitable result that in July of 1959 the company, whose stock the plaintiffs had purchased, "made an assignment for the benefit of creditors and ceased doing business." The trial court found that the competition of Pasadena Wholesale Electric, made possible by defendant's loan of $20,000, his establishment of credit, and the defection of his old and knowing employees "were the primary causes of the ultimate financial failure" of Cook-Nichols Company.

Plaintiffs, confronted by the facts we have related, and with the installments on the promissory notes in defendant's hand continually coming due, brought this action for a declaratory judgment defining the rights and liabilities of the parties. To protect themselves against the possibility that the promissory notes might be transferred to innocent purchasers, they also sought and obtained a preliminary injunction against their assignment. Emphasizing the fact that there was an actual controversy between the parties, defendant filed a cross-complaint in which he sought to recover on the promissory notes and, contending that the stock of Cook-Nichols Company, which had been put up as security, was worthless, also sought recovery under the collateral agreement..

This sharp issue was presented by the litigation: Had the defendant violated provision 16 of the agreement, his promise not to compete? If he had, he had forfeited his right to recover on the notes for, as found or concluded by the trial court (it matters little which we call it), the agreement of sale, the collateral security agreement and the notes "were intended by the parties to be and were all part of a single and inseparable transaction." The governing principle we find thus stated in *Pry Corporation of America* v. *Leach,* 177 Cal.App.2d 632, 639 [2 Cal.Rptr. 425] : "A party complain-

ing of the breach of a contract is not entitled to recover therefor unless he has fulfilled his obligations. [Citations.] He who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed."

Technically, defendant is correct in insisting that he neither "established" nor "conducted" any business organization which was competing with any line of business of Cook-Nichols Company, nor in any literal sense did he "loan his name" to a competitive business. The agreement is not to be narrowly, technically, construed, however. ▮ We read in the reports: "There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." (*Harm* v. *Frasher*, 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367].) "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." (*Brown* v. *Superior Court*, 34 Cal.2d 559, 564 [212 P.2d 878].) "When a person sells the contents of a store and agrees not to engage in the same business in the same city as long as the purchaser continues in business, the contract is construed as carrying with it the good will of the business." (*Mahlstedt* v. *Fugit*, 79 Cal.App.2d 562, 566 [180 P.2d 777].) ▮ "When the good will of a business is sold, it is not the patronage of the general public which is sold, but that patronage which has become an asset of that business. . . . ▮ The law implies in every contract a covenant that neither party will do anything that will deprive the other of the fruits of his bargain." (*Bergum* v. *Weber*, 136 Cal.App.2d 389, 392 [288 P.2d 623].)

We have found no case on all fours with ours in California but in *Dowd* v. *Bryce*, 95 Cal.App.2d 644, 647 [213 P.2d 500, 14 A.L.R.2d 1329], we have one that gives effect to this philosophy of the statements that we have just quoted and points to the conclusion to which we should come. The three Dowd brothers had sold their grocery and liquor store to the defendants, agreeing, for a period of 10 years, not to engage in a similar business within a radius of 2 miles, nor to sell any land within that distance to a purchaser contemplating business of the same nature. The question arose: Would it be a violation of this agreement to lease a parcel of land within the 2-mile radius to a third party who purposed to operate on it an off-sale liquor store? A declaratory judgment which de-

clared that the making of the lease would be a violation of the agreement was upheld on appeal. "This is for the reason," the appellate court declared, among other considerations "that [the seller] has control of the opportunity to compete and desires a profit therefor in the form of rental for his lease, as his lessee can only pay rent out of the profits made in competing with the purchaser from his lessor."

We are of the opinion that the trial court was warranted in concluding that the appealing defendant had violated his agreement with the plaintiffs, and that as a result he is in no position either now or later to recover against them on their promissory notes or on the collateral agreement which he holds. As the judgment gives effect to this conclusion, it should be and is affirmed.

Burke, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1963.