496 P.2d 878

**ARIZONA CHUCK WAGON SERVICE, INC., an Arizona Corporation, Appellant,**

v.

**Tony and Zelda BARENBURG, husband and wife, et al., Appellees.**

No. 1 CA-CIV 1610.

Court of Appeals of Arizona, Division 1.

May 11, 1972.

As Amended on Denial of Rehearing June 28, 1972.

Review Denied July 13, 1972.

Cavness, DeRose, Senner & Rood by Marc C. Cavness, Phoenix, for appellant.

Jennings, Strouss & Salmon by George B. Mount, Phoenix, for appellees.

KRUCKER, Chief Judge.

The plaintiff-appellant originally brought an action seeking injunctive relief against several defendants and damages for breach of contract against appellees-Barenburg. Trial upon plaintiff's claim for damages before the Honorable Warren McCarthy resulted in a judgment for defendants. Plaintiff's motion for a new trial was denied. Arizona Chuck Wagon has appealed from this judgment and the denial of a new trial.

The plaintiff's claim is based upon a contract between the plaintiff and defendants, the pertinent part of which provided that the sellers (defendants) would not engage in the mobile catering business within Maricopa County for a period of three years. The one exception to this non-competition agreement was a particular designated route which the plaintiff did not buy from defendants and which defendants were free to continue operating. Plaintiff contends that defendants violated the non-competition provision of this agreement. Defendants concede the existence and validity of the non-competition clause but maintain that they have never breached it.

Because defendants have never contested the validity of the non-competition clause, we shall not here decide its validity. Restrictive covenants generally were well analyzed in Lessner Dental Laboratories, Inc. v. Kidney, 16 Ariz.App. 159, 492 P.2d 39 (1971). Accepting the validity of the agreement, this court has only to decide if there is substantial evidence to support the judgment which found no violation of the non-competition clause. If reasonable men might differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered substantial. State v. Bearden, 99 Ariz. 1, 405 P.2d 885 (1965); Dietel v. Day, 16 Ariz. App. 206, 492 P.2d 455 (1972). On appeal, this court must consider the evidence and possible inferences therefrom in a manner most favorable to upholding the judgment. Dietel v. Day, supra; State v. Harris, 9 Ariz.App. 288, 451 P.2d 646 (1969).

The facts taken in the light most favorable to support the judgment of the trial court are as follows. The appellees Barenburg were engaged in April of 1965 in a mobile catering business in Phoenix, Arizona. On April 17, 1965, the Barenburgs sold a portion of their business to appellant. The written agreement entered into by the parties contained, *inter alia*, the following provision:

"(5) As further consideration for the payment of the purchase price by the Buyer [appellant], the Sellers [appellees] covenant and agree that *for a period of three (3) years* from the date of this Agreement *they will not* within Maricopa County, Arizona, *either directly or indirectly* as an owner, employer, employee, lessee, agent, operator, or in any other capacity, *engage in or in any way assist others* in operating any mobile catering business or any catering or food supply business furnishing merchandize (sic) for sale or consignment to any mobile catering business or engage in any social catering business." (Emphasis added)

The one exception to Paragraph (5) above is Paragraph (8) which states in part:

"Sellers are not selling and are themselves keeping one route and truck which they now own. It is understood and agreed by the parties hereto that the continued operation of said route, known as 'Route #2 Junior', by the Sellers shall not be a violation of the covenant as set forth in Paragraph (5) hereof, so long as any stops on said route do not directly compete with the route sold hereby or other routes owned by Buyer. * * *"

In March of 1968 appellant purchased certain catering routes from Lewis Combs. The Barenburgs knew of the purchase. In January of 1968 the Barenburgs hired David Ives, who had formerly been associated with Lewis Combs, to go to California and purchase two or three mobile catering trucks. These trucks were purchased in the name of the Barenburgs. After the trucks were delivered to Phoenix, Ives, as an employee of the Barenburgs, had the vehicles inspected and licensed by the Maricopa County Health Department. Ives listed Tony Barenburg as the owner-operator of the vehicles.

Ives testified that the trucks were licensed, inspected and registered in order to facilitate their intended sale, as the health registration would indicate to the purchaser that the food handling equipment was in proper order.

The trucks were purchased outright from a manufacturer in California by the Barenburgs, who then planned to refinance the trucks with GMAC. The trucks were then sold to three persons, Arthur S. Grote, David Ives and Robert Hargis. Ownership of the trucks, however, was apparently retained by Barenburg, who also carried automobile liability insurance on the trucks. In his deposition, Barenburg described the arrangements as "lease-purchase." The contract for sale of the truck to David Ives was in pencil on a plain white sheet of paper. It consisted of mathematical computations showing the in-

terest and total purchase price of $2,394, which was to be paid in weekly payments of $23. The writing was signed "Tony" and contained no other agreements. The purchase of a truck by Grote was not evidenced by any written contract nor was the purchase of a truck by Hargis. Barenburg testified that he was attempting to have the trucks purchased and refinanced in the names of the buyers. However, this had not been done as of the time of trial.

In March or April, and shortly before the expiration of the non-competition agreement, Hargis, Grote and Ives began operating their catering trucks. Ives operated along one route sold by Combs to appellant. This suit followed.

 In our opinion the issue to be decided in this case is whether the Barenburgs violated the agreement by assisting others in operating a mobile catering business. The "lease-purchase" agreements existing between Barenburg and Grote, Ives and Hargis, together with the payment by Barenburg of the insurance on the trucks, constituted at the very least an indirect operation of the mobile catering business since, without the trucks, there would have been no business to operate. Furthermore, a leasing arrangement can constitute indirect competition. C. f., Dowd v. Bryce, 95 Cal.App.2d 644, 213 P.2d 500 (1950). Here, Barenburg has, by virtue of a "lease-purchase" agreement, provided the entire means of competition except the food contained in the vehicles. By his act of leasing he created the very competition which it was the object of the non-competition clause to prevent.

In holding that assistance rendered to another who is engaged or about to engage in a competing business is a breach of a covenant not to compete, we use the test ordinarily applied which is one of weighing the effect of such assistance on the business of the covenantee. If such assistance creates an effect which was as injurious to the covenantee as if the covenantor had acted for himself, or if such assistance was such as would result in mis-

chief, the covenantor has generally been held to have breached his covenant to not compete. *See,* Wilson v. Delaney, 137 Iowa 636, 113 N.W. 842 (1907); Annot., 1 A.L.R.3d 778, 788. The Barenburgs, in this case, have control over the opportunity to compete by virtue of their ownership of the trucks. They expect a profit from their arrangements with Grote, Ives and Hargis. It goes without saying that the payments to the Barenburgs will come from profits made on the mobile catering route at the expense of appellant.

The agreement entered into between appellant and the Barenburgs provided for minimum liquidated damages in the event of the Barenburgs' breach and also for recovery of costs and legal fees in the event of legal action for enforcement of the agreement.

The judgment is reversed and the cause remanded to the trial court for a determination of the sums due appellant in accordance with the pertinent contractual provisions, including legal fees on appeal.

HATHAWAY, and HOWARD, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.