IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-222

Filed 19 November 2025

Wake County, No. 23CVS000904-910

CORNELIUS MCCALL and
SINCERA MCCALL, Plaintiffs,

v.

YUYING ZHANG, Defendant.

Appeal by plaintiff-appellants from order entered 19 July 2024 by Judge
Matthew T. Houston in Wake County Superior Court. Heard in the Court of Appeals
10 September 2025.

*Satterfield Law, PLLC, by Daron D. Satterfield, for plaintiff-appellants.*

*Gaskins Hancock Tuttle Hash LLP, by James M. Hash, and Andrew M.
Simpson, for defendant-appellee.*

DILLON, Chief Judge.

Plaintiffs ("Buyers") commenced this action for specific performance of an
option contract among other damages in superior court. Buyers appeal from the trial
court order granting summary judgment in favor of Defendant-Seller ("Seller"). We
conclude the trial court did not err in ordering summary judgment in favor of Seller.

## I. Background

In May 2020, Buyers, Cornelius McCall and Sincera McCall, and Seller,
Yuying Zhang, entered into an arrangement whereby Buyers leased a certain single-

family residence (the "Property") owned by Sellers for a period of approximately 24 months, with an option to purchase said Property. The arrangement was evidenced by three written agreements, as follows:

The parties signed a lease agreement whereby Buyers would lease the Property from Seller for 24 months, with the term expiring on 30 June 2022 (the "Lease"). The Lease stated it was being signed along with an option to purchase contract.

The parties signed an option to purchase agreement whereby Buyers would have the option to purchase the Property from Seller for $535,000.00 any time prior to 30 June 2022, when the Lease terminated (the "Option Contract"). Under the Option Contract, Buyers paid $25,000.00 for the option, which would be applied to the purchase contract should a sale thereunder be consummated.

The parties signed an Option to Purchase Disclosure (the "Disclosure"), whereby Buyers acknowledged, among other things, that their rights to purchase under the Option would terminate if they defaulted under the Lease. [1]

Two years later, on 16 May 2022, about a month and a half before the Lease and Option were to expire, Buyers notified Seller via text message of their intent to

---

[1] This arrangement between Buyers and Seller – whereby Buyers leased residential property with an option to purchase that property – potentially implicates provisions of Chapter 47G of our General Statutes, which generally provides a residential tenant with the right to cure certain defaults to prevent forfeiture of his option to purchase under the lease. In any event, we note Buyers do not make any argument that Chapter 47G applies; and, therefore, we do not consider Chapter 47G in our evaluation of Buyers' arguments on appeal.

exercise the option to purchase. Within a few weeks, Buyers were in the process of obtaining a mortgage. However, the lender that Buyers were working with required Buyers to submit a standard purchase agreement. Buyers reached out to Seller and asked Seller to prepare a purchase agreement which would be acceptable to Buyers' lender. Seller refused, indicating he had no obligation to prepare a purchase agreement. Buyers did not obtain loan approval or otherwise indicate they were prepared to close by 30 June 2022, the expiration date of the Lease and Option.

Six months later, in January 2023, Buyers commenced this present action seeking specific performance under the Option and other damages. Nothing in the record demonstrates that Buyers otherwise were ready, willing and able to close at any time up to the commencement of this action.

After a hearing on the matter, the trial court entered summary judgment for the Seller. Buyers appeal.

## II. Analysis

On appeal, Buyers argue the trial court erred by granting Seller summary judgment. We review a trial court's order granting summary judgment *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524 (2007). "[F]acts asserted by the [nonmoving] party are taken as true and . . . viewed in the light most favorable to [the nonmoving] party." *Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 334 (2015).

To survive summary judgment, Buyers were required to produce evidence showing they properly exercised their option to purchase under the Option (thereby

showing they had a contract to purchase the Property) and that they were ready, willing and able to close by the closing date as required under the Option.

We note Seller's argument that Buyers failed to properly exercise the Option. Our Supreme Court has held an option to purchase must be exercised, if at all, by the date specified in the option contract. *See Trust Co. v. Medford*, 258 N.C. 146, 150 (1962) (reiterating the general rule time is of the essence in an option to purchase). Further, the option to purchase must be exercised, if at all, in *the manner* specified in the option contract. *Id.*; *Kidd v. Early*, 289 N.C. 343, 361 (1976). That is, an option contract may provide for an option to be exercised by tendering all or part of the purchase price by the option deadline. Or the option contract may provide an optionee merely needs to give the optionor notice of his intent to exercise by the deadline, in which case (absent a stated closing date), the optionee must tender the purchase price within a reasonable amount of time after said notice is given. *Id*, at 371.

In the present case, the Option Contract provided Buyers could exercise the option to purchase the Property, if at all, as follows:

> NOTICE REQUIRED TO EXERCISE OPTION. To exercise the Option to Purchase, the Buyer/Lessee must deliver to the Seller/Landlord written notice of Buyer/Lessee's intent to purchase. In addition, the written notice must specify a valid closing date. The closing date must occur before the original expiration of the Lease Agreement, or the date of the expiration of the Option to Purchase Agreement designated in paragraph 1, whichever occurs later.

Based on the above provision, the closing date was 30 June 2022, as the expiration

date for both the Lease and the Option Contract was 30 June 2022.

The above provision is ambiguous in many respects. However, for purposes of our analysis, we construe any ambiguity against the Seller. As such, to exercise the option to purchase the Property, Buyers were merely required to provide notice to Seller of their intent to purchase, with said notice to include a closing date. There was no set date by which Buyers were required *to provide the notice*, so long as Buyers closed the sale by the date as specified in the Option Contract. However, Seller argues Buyers did not properly *exercise the option* because Buyers did not provide a closing date as part of their notice, as required by the Option Contract. Seller points to the phrase in the Option Contract requiring Buyers to include a proposed closing date as part of the notice, something Buyers did not do.

Assuming, though, Buyers were not deficient in *providing notice* of their intent to exercise the option, for the reasoning below, we conclude Seller was still entitled to summary judgment, as Buyers failed to produce evidence that they were ready, willing and able *to close* within a reasonable amount of time after 30 June 2022, through no fault of the Seller. *See Munchak Corp. v. Caldwell*, 301 N.C. 689, 694 (1981) (holding that a party claiming a right to specific performance has the responsibility to show "the existence of a valid contract, its terms, and either full performance on his part or that he is ready, willing and able to perform").

An option contract generally transforms into the purchase contract upon the optionee's proper exercise of the option. *Kidd*, 289 N.C. at 352 (citing *Lawing v.*

*Jaynes*, 285 N.C. 418, 423 (1974)).  The closing date thereunder was 30 June 2022.

Regarding a closing date provision in a real estate purchase contract, our Supreme Court has held that "[g]enerally, in the absence of a 'time is of the essence' provision, the parties must perform *within a reasonable amount of time* of the date set for closing." *Fletcher v. Jones*, 314 N.C. 389, 393–94 (1985) (emphasis added). That is, time is of the essence, generally, regarding the time by which an option *must be exercised*.  But time is *not* of the essence regarding a stated closing date unless specified as such in the contract.  Where the stated closing date is *not* specified as of the essence, a buyer may close on a date after the stated closing date as long as it is within a reasonable amount of time after the stated closing date.

Here, assuming Buyers properly exercised their option, the Option Contract became the purchase contract.  There is a provision in the Option Contract that time was of the essence, but it could be argued this provision does not govern the closing date but rather only the date by which Buyers were to exercise their option.  If the provision did not apply to the closing date, Buyers had a reasonable time after 30 June 2022 to be ready to close.

There was, however, no evidence that Buyers were ready, willing and able to close by the stated closing date or even six months after, when they commenced this action in 2023.  We hold this period of over six months was beyond any reasonable time Buyer had to close.  In so holding, we note what constitutes a reasonable time is "generally a mixed question of law and fact, and, therefore, for the jury, but when the

facts are simple and admitted, and only one inference can be drawn, it is a question of law." *J.B. Colt Co. v. Kimball*, 190 N.C. 169, 174 (1925). And our Court has held a short delay of days or a few weeks constituted a reasonable time. *See Harris v. Stewart*, 193 N.C. App. 142, 148 (2008) (five-day delay in performance for pre-closing condition is reasonable); *see also Wolfe v. Villines*, 169 N.C. App. 483, 489 (2005) (a few weeks is not unreasonable as a matter of law). We hold, though, in the context of the parties' contracts, Buyers' failure to be ready to close within six and a half months (when they commenced this action) is not reasonable as a matter of law.

Buyers, though, argue they were unable to close in a timely manner because Sellers were uncooperative in failing to provide a separate/new purchase contract which was being required by Buyers' lender. Concerning this argument, there was evidence which showed as follows: In late May or early June 2022, Buyers had applied for a loan with one lender. The lender informed Buyers that, as a condition of approval, Buyers were required to provide lender a separate purchase agreement between Buyers and Seller for the Property, suggesting that the lender would not provide a loan commitment based on the Option Contract which had ripened into the purchase contract. Buyers reached out to Seller, requesting Seller prepare, provide, or otherwise pay for the drafting of a new purchase agreement consistent with the terms of the Option Contract to satisfy Buyers' lender. There is no evidence Buyers themselves ever undertook the preparation of a new purchase agreement or provided the same to Seller for Seller's signature.

We recognize there is a duty of good faith and fair dealing implied in every contract between the contracting parties. *Bicycle Transit Authority v. Bell*, 314 N.C. 219, 228 (1985) (citation omitted). This duty means the contracting parties will "not do anything which injures the right of the other to receive the benefits of the agreement." *Id.* However, we conclude this duty did not impose upon *Seller* any obligation to prepare a new purchase agreement where such agreement was required by Buyers' chosen lender. At best, Seller may have had a duty to cooperate with Buyers in executing a new agreement prepared by Buyers to satisfy Buyers' lender. And there is no evidence Seller otherwise unduly hindered or acted in bad faith in thwarting Buyers' ability to meet the closing deadline. Accordingly, since Buyers failed to obtain a loan or otherwise show they had the ability to close the purchase of the Property within a reasonable time after 30 June 2022, through no breach by Seller, Seller was entitled to summary judgment on Buyers' claims.

## III. Conclusion

We conclude, on *de novo* review, there is no genuine issue of material fact. The Buyers failed to produce evidence that they were ready, willing, and able to close on the Property within a reasonable time after the closing date provided in the Option Contract, through no breach by the Seller. Therefore, we affirm the trial court's order granting summary judgment for Seller.

AFFIRMED.

Judges ZACHARY and FREEMAN concur.