OPINION OF THE COURT
Albert H. Buschmann, J.
This is an action for breach of contract in which the plaintiffs, Foyer Key Sung and Niema Young Sung, allege that the defendants, Juan Ramirez, Lilliana Ramirez and Francisca Yolanda Fernandez, have breached a noncompeting covenant contained in a contract of sale for a deli-grocery business executed between the afore-mentioned parties. The defendants have counterclaimed against plaintiffs for the balance of promissory notes, given by defendants as consideration for the sale of the business, interest on the balance and attorney’s fees. As an affirmative defense to the counterclaims, plaintiffs have alleged that they were fraudulently induced by defendants into entering the contract of sale.
The following constitutes the findings of fact and conclusion of law pursuant to CPLR 4213. Defendants had owned a deli-grocery store located at 289 Broadway in Staten Island, New York. On April 22, 1980, defendants had *314 purchased the realty known as 1088 Castleton Avenue, located 2½ blocks away from the Broadway store. The Castleton building had been formerly operated as a grocery store.
During the summer of 1980, defendants had placed advertisements in a local newspaper in an attempt to solicit a purchaser for the. Broadway store and a lessee for the Castleton building. Plaintiffs, after expressing an interest in the Broadway store, entered into a written contract for its sale on August 21, 1980. The contract and bill of sale contain, inter alia, a covenant not to compete which in pertinent part provides: “And the Transferor [defendants here] covenants and agrees, to and with the Transferee [plaintiffs here] not to re-establish, re-open, be engaged in, nor in any manner whatsoever become interested, directly or indirectly, either as employee, as owners, as partners, as agent or as stockholders, director or officer of a corporation, or otherwise, in any business, trade or occupation similar to the one hereby sold, within the County of Richmond for 5 years.”
At the closing on October 17, 1980, as part of the total consideration of $27,000 to be given in exchange for the business, plaintiffs executed and delivered to the defendants 23 promissory notes, bearing no interest.
On July 21,1981, defendants leased the Castleton building and some equipment contained therein, to one Raphael Diaz. Pursuant to the lease, the premises were to be operated as a deli-grocery. On February 2, 1983, Diaz assigned the lease to one Henira.
Initially, the business acquired by plaintiffs showed weekly gross receipts which approximated those which had been represented by defendants in the local newspaper advertisement of the business. After the leasing to Diaz of the Castleton building, the weekly gross receipts of the Broadway business dropped about $4,000 per week. Plaintiffs have contended that such decrease was caused by the leasing of the Castleton building as a grocery store, allegedly in violation of the noncompeting covenant, and that they have been damaged to the extent of $175,000 thereby.
On November 17,1981, plaintiffs refused to honor one of the promissory notes due on that day. The notes contain an *315 acceleration clause and provide that the makers agree to pay all costs and expenses of collection plus attorney’s fees of 20% of the principal and interest due. Furthermore, the notes provide for interest of 10% per annum on the remaining balance, in the event of default. The balance owed by plaintiffs, as represented by the notes is $10,800.
It is well established that the purchasers of a business are entitled to protect the goodwill attached to the business through the use of a restrictive not-to-compete covenant. (Purchasing Assoc. v Weitz, 13 NY2d 267; Diamond Match Co. v Roeber, 106 NY 473.) These covenants generally purport to restrain the transferor of the business from competing with his transferee in a specified area and for a period of time. The only limitation placed on such covenants is that they be no more restrictive than is reasonably necessary to protect the transferee’s newly acquired goodwill. (Purchasing Assoc. v Weitz, supra.)
In the instant action, the covenant which requires that the defendants refrain from competing with the plaintiffs in the County of Richmond for a period of five years is not unreasonable, per se, either as to time or duration. Covenants not to compete for periods of time as long as 99 years have been upheld as valid. (Diamond Match Co. v Roeber, supra.) Although the restrictive area specified in the covenant of the instant action does appear to be somewhat overextensive, this fact does not prevent this court from enforcing the covenant in such an area as it finds to be reasonable. (Goldstein v Maisel, 271 App Div 971.) The store which is allegedly in violation, of the restrictive covenant opened only 2½ blocks away from the plaintiffs’ store. The court believes that an area of restriction which is reasonably necessary to protect the plaintiffs’ goodwill certainly encompasses a circular area within a three-block radius. Predicated upon these determinations this court now holds that the restrictive covenant present in the bill of sale dated October 17,1980 is enforceable for a period of five years in an area at least as lárge as a circle with a radius equal to the distance between the Castleton and Broadway stores.
Before the relief requested by the plaintiffs can be granted, it must be determined whether the defendants *316 breached the restrictive covenant by this leasing of the Castleton premises to be operated as a deli-grocery store. Absent an agreement to the contrary,-when a business is sold the vendor is under no legal duty to refrain from competing with his vendee. (Mohawk Maintenance Co. v Kessler, 52 NY2d 276.) Hence, if the covenant between the parties in this action is construed not to prohibit a leasing of a building to be operated as a deli-grocery by the defendants, plaintiffs’ prayer for relief must be denied. The agreement provides: “And the Transferor further covenants and agrees to and with the Transferee, not to reestablish, re-open, be engaged in, nor in any manner whatsoever become interested, directly or indirectly, either as employee, as owner, as parties, as agent, or as stockholder, director or officer of a corporation, or otherwise, in any business, trade or occupation similar to the one hereby sold” within Staten Island for a term of five years. The status of lessor is not specifically enumerated as one which the defendants are prohibited from acquiring, therefore, the covenant has not been breached unless the leasing of the building has made the defendants “interested” in the business conducted thereon within the meaning given to that term by the parties to the agreement. This court finds that the defendants are not so interested. Plaintiffs’ contention that defendants’ derivation of rent from the leases of the Castleton building is sufficient to make defendants interested in the business conducted within the building is untenable. The obligation of the lessees of the Castleton building to pay rent exists completely independent of the success or failure of the business ventured upon the premises.
Although there appear to be no reported cases in New York which touch upon the issue raised by this action, decisions in several other jurisdictions are in accord with the one handed down by the court today. (Wineteer v Kite, 397 SW2d 752; McKeighan Wachter Co. v Swanson, 138 Wash 682, affd 141 Wash 694; Bradford v Peckham, 9 RI 250.) These cases stand for the proposition that the seller of a business to which goodwill is attached is not prevented from leasing other property which he owns to a competitor of the purchaser of the business, provided that the lessor *317 has no interest in the profits of the competing business and further that he not actively participate in the promotion of the new business. There is no evidence in the record that the defendants either shared in the profits derived from the business conducted in the Castleton building or that they diverted those customers who composed the goodwill of the Broadway business to the Castleton business. Based upon all the evidence before it, the court now holds that the lease negotiated between the defendants and Diaz is not a breach of the covenant not to compete between the parties to this action. The narrow construction given to the restrictive covenant in this action is wholly consistent with the public policy in New York against agreements on restraint of competition. (General Business Law, § 340, subd 1; DiTomasso v Loverro, 250 App Div 206, affd 276 NY 551.)
Plaintiffs have alleged that they have been victims of fraud in the inducement as an affirmative defense to the defendants’ counterclaims to recover on the promissory notes given by plaintiffs to defendants as consideration for the business. To successfully raise the defense the plaintiffs would have to prove, by clear and convincing evidence, that: (1) the defendants had made a misrepresentation of a material fact, (2) which was in fact false and which the defendants knew to be false at the time it was made, (3) the misrepresentation was made for the purpose of inducing plaintiffs to rely on it, (4) the plaintiffs did in fact, and without negligence on their part, rely on the misrepresentation, and (5) injury was caused as proximate result of such reliance. (Simcuski v Saeli, 44 NY2d 442; Channel Master Corp. v Aluminum Ltd. Sales, 4 NY2d 403.)
No evidence has been adduced on the part of the plaintiffs to support their allegation of fraud. The only representation made by defendants occurred in the newspaper advertisements. However, these representations were not false since the gross receipts of the business did approximate the $11,000 figure in the ads initially. It was not until the competing business opened that the gross receipts of the plaintiffs’ business declined. Since there is no evidence that a material misrepresentation was made by defendants and since the defendants have been adjudged not to have breached the restrictive covenant, both of the plaintiffs’ defenses to the counterclaims must fail.
*318 Considering the time expended and the nature of the services performed by the defendants’ attorney, the court finds that the 20% figure for liquidated attorney’s fees is a reasonable one. The defendants’ counterclaim for the balance of the promissory notes plus interest and counsel fees of 20% of principal and interest is therefore granted.