[No. 8550–3–III.   Division Three.   June 2, 1988.]

RIVERVIEW FLORAL, LTD., *Respondent,* v. JASPER T. WATKINS, ET AL, *Appellants.*

*Rodney Reinbold* and *Mansfield, Reinbold & Gardner,* for appellants.

*Michael Howe,* for respondent.

GREEN, J.—This action was commenced in December 1985 by Riverview Floral, Ltd., against Jasper and Oletta Watkins to enforce the provisions of a covenant not to compete and to recover damages for its breach. Following a bench trial, the court found a breach, enjoined future breaches, and awarded damages to Riverview. The Watkins appeal.

These issues are presented: (1) Are the findings of fact supported by substantial evidence? (2) Based on those findings, did the court properly conclude there was a breach of the covenant not to compete? (3) Was the scope of the injunction and the amount of damages appropriate?

Construing the evidence in the light most favorable to Riverview, as we must do, we conclude the findings are supported by substantial evidence and reveal the following facts. Riverview Floral is a corporation engaged in the growing, harvesting, processing and selling of floral products, principally gypsophila, commonly known as baby's breath. In April 1982 the corporate stock of Riverview was owned by Douglas Sapp and Mike Baker, two of the incorporators, and the Watkins. Prior to September 1984, Riverview made a cash disbursement of $10,000 to each of the shareholders which was treated as a loan and was so understood by the Watkins.

Riverview thereafter purchased the shares owned by Mr. Baker and in September 1984 purchased the stock owned by the Watkins. The agreement between Riverview and the Watkins provided for a purchase price of $30,000 cash, cancellation of the shareholder loan and the Watkins' promise "not [to] enter into any business which deals in or with gypsophelia [sic] plants commonly known as 'babies [sic] breath' for a period of five years from the date of this agreement." The court found it was the intent of Riverview to buy out the Watkins' interest and to prohibit them from competing in baby's breath in Okanogan County for a period of 5 years, and this was also the intent of the Watkins.

The court then found the Watkins violated the terms of the covenant not to compete enabling Don Marsh and Pat Descoteaux, and their respective spouses, to engage in the baby's breath business. The Watkins provided them with financial backing, made available real property on which to harvest baby's breath, and provided them with equipment including a pickup, tractor and trailer, and certain buildings in which to process, dry and package baby's breath. In return, the Watkins were to receive certain percentages of the profits from the sharecropping business.

The court further found the Watkins entered into the baby's breath business and competed with Riverview in the purchase of prime baby's breath real property to the detriment of Riverview. As a result, Riverview lost profits because it was unable to obtain sufficient quantities of baby's breath to fill its orders. The court also found the combined efforts of the Watkins, Marshes, and Descoteauxes produced quantities of baby's breath from the Watkins' property and other properties, which if available to Riverview would have increased its net profit by $100,747 in 1985 and $107,956 in 1986. The court then found it is not known exactly how much of this quantity would have been available to Riverview but for the breach of the covenant; however, Riverview, while not showing damage with absolute certainty, provided data upon which

to estimate lost profits with reasonable certainty. Riverview had the capacity in the years 1985 and 1986 to market additional baby's breath if it had been available.

The court concluded the Watkins breached the agreement, enjoined future breaches and entered judgment against them for $30,000 damages, $619.85 costs and $6,730.40 attorney fees, for a total judgment of $37,350.25.

First, the Watkins contend the court erred by reading into the agreement a provision prohibiting them from selling or leasing their property to anyone engaged in the baby's breath business and from providing assistance in the form of equipment, capital, funds or facilities to such persons unless the product was sold to Riverview. They contend this was error, citing *Armstrong v. Taco Time Int'l, Inc.*, 30 Wn. App. 538, 635 P.2d 1114 (1981). On the other hand, Riverview contends the intent and understanding of the parties and the actions of the Watkins, which led the court to find a breach, are factual determinations not to be disturbed if supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).[1]

Absent a contractual provision to the contrary, a party who covenants not to compete in a particular business is not precluded from merely leasing property or loaning money to others engaged in that business. The covenantor is precluded from having a connection with the

---

[1]Further, Riverview asserts a breach of a covenant not to compete is generally found if as here the effect of helping another with his business is as damaging to the covenantee as if the covenantor had acted on his own behalf. *Dowd v. Bryce*, 95 Cal. App. 2d 644, 213 P.2d 500, 14 A.L.R.2d 1329 (1950). *Dowd* holds that a seller who lawfully agrees not to directly or indirectly compete with the buyer indirectly competes by leasing land within the restricted territory for a consideration, knowing at the time of the lease that it will be used for the same kind of business sold to the purchaser. Therefore, the act of leasing creates a link in the chain which creates the very competition it was designed to prevent. *Dowd*, 213 P.2d at 501–02. This reasoning has been criticized. *See, e.g., Wineteer v. Kite*, 397 S.W.2d 752, 759 (Mo. Ct. App. 1965); Annot., *Contract by Seller of Business Not To Compete as Affecting His Lease of Other Property in Restricted Area to One Who He Knows Will Compete With Purchaser*, 14 A.L.R.2d 1333, 1334–36 (1950). We decline to follow this minority view.

business or deriving a profit therefrom. *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 235 P.2d 293 (1951); *McKeighan Wachter Co. v. Swanson,* 138 Wash. 682, 245 P. 10, *aff'd on rehearing,* 141 Wash. 694, 250 P. 353 (1926). *See Wineteer v. Kite,* 397 S.W.2d 752 (Mo. Ct. App. 1965); *Midlands Transp. Co. v. Apple Lines, Inc.,* 188 Neb. 435, 197 N.W.2d 646 (1972); *Foyer Key Sung v. Ramirez,* 121 Misc. 2d 313, 467 N.Y.S.2d 486 (1983); Annot., *Rendering Financial or Other Assistance to Another as Breach of Covenant Not To Compete,* 1 A.L.R.3d 778 (1965).

Here, the agreement contains no provision precluding the Watkins from merely leasing property or loaning money to persons engaged in the baby's breath business. Therefore, the court is precluded from reading such a provision into the agreement, *Armstrong v. Taco Time Int'l, Inc., supra,* and that portion of the judgment which enjoins the Watkins "[f]rom making any real property available by sale, lease or otherwise to anyone engaged in the babies [*sic*] breath business" is in error and must be reversed.

*McKeighan* and *Schassberger* indicate a connection with the business, including deriving profits therefrom, is sufficient to find a breach. Similarly, engaging in business under the guise of assistance to others is a breach of a covenant not to compete, *Merager v. Turnbull,* 2 Wn.2d 711, 725, 99 P.2d 434, 127 A.L.R. 1142 (1940), as is doing business through "dummy operators". *Lyle v. Haskins,* 24 Wn.2d 883, 897, 168 P.2d 797 (1946).

Here the court found that the Watkins were actively involved in financing the Marshes, who are relatives of the Watkins, and the Descoteauxes enabling them to get into the baby's breath business and then provided them with the necessary equipment and use of buildings, processed the baby's breath and then shared in the profits of the venture. Thus, the Watkins demonstrated an interested involvement in the business beyond the mere leasing of property or loaning of money for a return of principal. The court concluded this was a breach of the covenant and we agree.

Finally, the Watkins contend the damage award of $30,000 is based on speculation and conjecture as there is no showing Riverview would have been successful in obtaining the baby's breath from the properties that were leased.

■ Lost profits are properly recoverable as damages when (1) they are within the contemplation of the parties at the time the contract was made, (2) they are the proximate result of defendant's breach, and (3) they are proven with reasonable certainty. *Larsen v. Walton Plywood Co.,* 65 Wn.2d 1, 390 P.2d 677, 396 P.2d 879 (1964). A claim for lost profits is properly denied when the alleged loss cannot be adequately proved and remains speculative. *Golf Landscaping, Inc. v. Century Constr. Co.,* 39 Wn. App. 895, 903, 696 P.2d 590 (1984). Such is not the case here.

The trial court found that Riverview, while not showing damage with absolute certainty, provided data upon which lost profits could be estimated with reasonable certainty so that the damages are not based on speculation and conjecture. The evidence established, and the court found, that Riverview had unfilled orders in the years 1985 and 1986 and the capacity to produce additional product had the baby's breath been available. Riverview presented unrebutted evidence that it had a reduced supply of baby's breath during 1985 and 1986 resulting in lost profits attributable to the breach in excess of $50,000 during each of those years. The evidence also established that neither the Marshes nor the Descoteauxes contacted Riverview to allow them an opportunity to bid on their baby's breath, but instead merely accepted the offer of another buyer who had been referred to them by the Watkins. The extent to which Riverview's profits were affected by the Watkins, Marshes and Descoteauxes' operations was a question of fact to be determined by the trial court.

The award of $30,000 was within the lower range of the evidence and will not be disturbed. Where the court is convinced substantial damages have been incurred, the injured party will not be denied the remedy of damages because the

exact amount is uncertain. *V.C. Edwards Contracting Co. v. Port of Tacoma,* 83 Wn.2d 7, 15, 514 P.2d 1381 (1973); *Lester N. Johnson Co. v. Spokane,* 22 Wn. App. 265, 273, 588 P.2d 1214 (1978), *review denied,* 92 Wn.2d 1005 (1979).

The agreement provides for reasonable attorney fees in the event of a suit to enforce the terms and conditions of the agreement. Pursuant to Riverview's request, it is awarded $2,593.97 reasonable attorney fees on appeal together with their statutory costs and expenses.

The trial court's judgment is affirmed, except as to that portion which enjoins the Watkins "[f]rom making any real property available by sale, lease or otherwise to anyone engaged in the babies [*sic*] breath business" which is reversed.

THOMPSON, A.C.J., and MUNSON, J., concur.

Review denied by Supreme Court October 4, 1988.