**NATIONAL PROPANE CORPORATION; National Propane SGP, Inc.; and National Propane, L.P., n/k/a Columbia Propane, L.P., Plaintiffs–Appellants,**

v.

**Wylie R. MILLER; Hometown Propane, Inc.; and D & J Leasing, Inc., Defendants–Appellees.**

No. 99CA0149.

Colorado Court of Appeals, Div. IV.

June 22, 2000.

Rehearing Denied Aug. 17, 2000.

Certiorari Denied March 12, 2001.

The Law Offices of William H. Kain, William H. Kain, Grand Junction, Colorado; Massey, Semenoff, Stern & Schwarz, Edward W. Stern, Denver, Colorado, for Plaintiffs–Appellants.

Vaughan & DeMuro, David R. DeMuro, Denver, Colorado, for Defendant–Appellee Wylie R. Miller.

Welborn, Sullivan, Meck & Tooley, P.C., William R. Rapson, Danielle Smith, Denver, Colorado, for Defendants–Appellees Hometown Propane, Inc., and D & J Leasing, Inc.

Opinion by Judge ROTHENBERG.

Plaintiffs, National Propane Corp.; National Propane SGP, Inc.; and National Propane, L.P., n/k/a Columbia Propane, L.P., (collectively, purchaser) appeal from a judgment in favor of defendants, Wylie R. Miller (Miller); Hometown Propane, Inc. (Hometown); and D & J Leasing, Inc. (D & J), finding that Miller did not materially breach his noncompetition covenant with purchaser. We reverse and remand for further proceedings.

### I.

On August 21, 1995, Miller sold his retail propane company, All Seasons Propane, Inc., to purchaser. As part of the sale, Miller and the other shareholders of All Seasons signed a noncompetition covenant restricting their activities on behalf of other retail propane

companies within a fifty mile radius of All Seasons' business locations for a period of five years.

Trial testimony indicated that the following events occurred following the sale. In early 1996, Miller and his brother-in-law decided to start another propane company. Miller performed all of the initial start-up work for the enterprise, which included incorporating Hometown, the actual propane company, and D & J Leasing, which was created to acquire the necessary equipment for Hometown. Miller did not serve as a director, officer, or employee of either corporation, or own any interest in them, but he did give his address as the address of both corporations, and he paid the incorporation fees.

Evidence also was presented that, in addition to incorporating Hometown and D & J Leasing, Miller contacted several vendors of propane equipment, wrote the checks to purchase equipment on behalf of D & J Leasing, bought land inside the restricted area for Hometown's offices, and then leased and thereafter sold the land to D & J Leasing. Hometown opened for business on May 1, 1996, and made its first propane sale on May 8, 1996.

Purchaser operated All Seasons as a separate entity until July 1, 1996, when it closed the All Seasons office and integrated All Seasons' operations under the National Propane name. When Miller helped to create Hometown, and when Hometown began operations, All Seasons was still in operation as a separate business. Purchaser filed this action on June 7, 1996.

After a bench trial, the trial court entered judgment in favor of all defendants. Relying on authority holding that loaning money and leasing property to a competitor generally does not constitute a breach of a noncompetition covenant, the court found that purchaser had failed to prove a material breach of the noncompetition covenant by Miller. The court found that while Miller had engaged in other activities on behalf of Hometown and D & J Leasing, such activities did not constitute a material breach of the covenant because they were of brief duration, were uncompensated, and required no specialized knowledge.

Given its finding that Miller did not breach the covenant, the trial court further found that Hometown and D & J Leasing did not induce Miller to breach the covenant, and that there was no evidence of a civil conspiracy or damages. Pursuant to the parties' contract which allowed attorney fees to the prevailing party, the court awarded over $150,000 in attorney fees to Miller plus costs.

## II.

The defendants initially urge us to affirm the trial court's judgment on the grounds that purchaser lacks standing to bring the suit because: (1) none of the named plaintiffs is a real party in interest; and (2) All Seasons, the company protected by the noncompetition covenant, ceased to exist in July 1996 and its goodwill was forfeited, leaving nothing for the noncompetition covenant to protect. We are not persuaded.

### A. Real Party in Interest

We reject defendants' contention that none of the plaintiffs is a real party in interest.

Every action must be brought in the name of the real party in interest. C.R.C.P. 17(a). The real party in interest is the party who, by virtue of the substantive law, has the right to invoke the aid of the court to vindicate the legal interest in question. *Ogunwo v. American National Insurance Co.*, 936 P.2d 606 (Colo.App.1997). This right of action may be assigned. *See Thistle, Inc. v. Tenneco, Inc.*, 872 P.2d 1302 (Colo. App.1993).

Here, the 1995 contract specified that it could not be assigned without the written agreement of the other parties to the contract, unless the assignee was a subsidiary or affiliate of the buyer.

All Seasons was purchased by All Seasons Acquisition Corp., a corporation formed by purchaser for the sole purpose of acquiring All Seasons. All Seasons Acquisition Corp. later changed its name to National Propane SGP, Inc., and assigned almost all of its assets, including the noncompetition covenant, to National Propane, L.P. Because National Propane Corp. never had any interest

in the covenant, and National Propane SGP, Inc., assigned all of its interest to National Propane, L.P., only National Propane, L.P., may enforce the contract.

It is undisputed that Miller did not agree to the assignment of the noncompetition covenant from National Propane SGP, Inc., to National Propane, L.P. It also is undisputed that National Propane, L.P., is not a subsidiary of National Propane SGP, Inc. The remaining issue is whether National Propane, L.P., and National Propane SGP, Inc., are affiliates within the meaning of the 1995 contract of sale. The trial court found that they are, and we agree.

■ Construction of a contract is a question of law that we review *de novo.* We first look to the language of the contract to determine the intent of the parties, and the contract should be construed to give effect to that intent. Words should be given their plain meaning according to common usage, and strained or unnatural interpretations must be avoided. *Safeco Insurance Co. v. Robertson,* 994 P.2d 488 (Colo.App.1999).

Defendants emphasize that National Propane, L.P., and National Propane SGP, Inc., conceded they were not affiliates in the 1996 contract assigning the noncompetition covenant to National Propane, L.P. However, we agree with the trial court that this is irrelevant to our interpretation of the 1995 contract between purchaser and All Seasons. We must look to the intent of the parties at the time as revealed by the plain language of the contract at issue.

The question is not how National Propane, L.P., and National Propane SGP, Inc., defined their relationship in a separate contract written a year later, but whether they were in fact affiliates for purposes of the 1995 agreement.

"Affiliate" is defined in the Colorado Business Corporation Act, § 7–101–101, et seq., C.R.S.1999, as: "[A]ny person that directly or indirectly through one or more intermediaries controls, or is controlled by, *or is under common control with,* the person specified." Section 7–101–401(2), C.R.S.1999 (emphasis added). Here, the trial court found that National Propane, L.P., and National Pro-

pane SGP, Inc., are under the common control of National Propane Corp. Therefore, they are affiliates under the plain meaning of that term as it is applied to corporations, and purchaser can enforce the covenant.

### B. Goodwill

Defendants next contend that the noncompetition covenant, by its plain terms, protects only All Seasons, and that because All Seasons no longer exists as a separate entity the covenant can no longer be enforced. Again, we disagree.

■ The purpose of a noncompetition covenant is to prevent the seller from soliciting the buyer's new customers and to protect the goodwill inherent in the purchase. *DBA Enterprises, Inc. v. Findlay,* 923 P.2d 298 (Colo. App.1996).

■ Goodwill has no existence as property in and of itself, but is an incident of a continuing business having a particular locality or name. *In re Marriage of Graff,* 902 P.2d 402 (Colo.App.1994). Goodwill also has been defined as the expectation of continued and repeated public patronage. *In re Marriage of Nichols,* 43 Colo.App. 383, 606 P.2d 1314 (1979).

■ The right to enforce a noncompetition covenant ancillary to the sale of a business ends with the termination or abandonment of the business to which the covenant was ancillary. Once the protected business is liquidated and its goodwill abandoned, enforcement of the covenant constitutes a void and unenforceable restraint of trade. *See Gibson v. Eberle,* 762 P.2d 777 (Colo.App.1988).

■ Here, the noncompetition covenant protects All Seasons, and it is undisputed that All Seasons ceased to exist as a separate business entity on July 1, 1996. All Seasons' office was closed, and its operations were merged into purchaser's operations. Therefore, both the name and locality of All Seasons –the two essential elements of goodwill –were abandoned. Furthermore, the trial court found no evidence that Miller ever solicited any customers away from purchaser. *See DBA Enterprises, Inc. v. Findlay, supra.*

Accordingly, we agree with the defendants that the noncompetition covenant was unenforceable *after* July 1, 1996. However, all of Miller's work on behalf of Hometown and D & J Leasing occurred *before* July 1, 1996, while All Seasons was still in operation, and Hometown began competing with All Seasons in May 1996. Purchaser filed this action in June 1996, also while All Seasons was still a separate entity.

For all of these reasons, we conclude purchaser has standing to bring this action on behalf of All Seasons. However, any compensatory damages that might be awarded must be limited to the period before July 1, 1996.

### III.

National contends the trial court erred in finding that Miller did not materially breach the noncompetition covenant. Because we conclude that the trial court did not apply the proper test of materiality, that it considered irrelevant factors in making its determination, and that it failed to consider the plain language in the parties' agreement, we vacate the judgment and remand the case for further proceedings.

Whether a noncompetition covenant has been materially breached is a question of fact. *DBA Enterprises, Inc. v. Findlay, supra.*

To determine whether a breach of contract is material, the trier of fact should consider: (1) the extent to which an injured party, absent the breach, would obtain a substantial benefit from the contract, and (2) the adequacy of compensation in damages. *See Kaiser v. Market Square Discount Liquors, Inc.,* 992 P.2d 636 (Colo.App.1999); *DBA Enterprises, Inc. v. Findlay, supra;* Restatement (Second) of Contracts § 241 (1981).

Determinations of factual questions, such as the credibility of witnesses and the weight to be afforded the evidence, are issues committed to the sound discretion of the trial court as the trier of fact. Its findings must be accepted on review unless they are so clearly erroneous as not to find support in the record. *Tiger v. Anderson,* 976 P.2d 308 (Colo.App.1998).

Here, the noncompetition covenant between purchaser and Miller contains the following relevant language:

> [All Seasons] and the Shareholders of [All Seasons] shall not for a period of five (5) years from the date hereof, *directly or indirectly, in any manner whatsoever,* own, have any other interest in or right with respect to (other than through ownership of not more than one percent (1%) of the shares of the stock of a corporation's [sic] which is listed on a national securities exchange), or *work or consult for any person or enterprise which competes or which shall compete with [All Seasons] with respect to the business of retail propane sales and delivery and appliance sales and service* within a fifty (50) mile radius of All Seasons' present business locations in Craig, Rifle, Meeker, and Montrose, Colorado.

(emphasis added)

Covenants not to compete are disfavored in Colorado and exceptions to the general rule are narrowly construed. *Gold Messenger, Inc. v. McGuay,* 937 P.2d 907 (Colo.App.1997). However, the noncompetition covenant at issue here is enforceable as a covenant ancillary to the sale of a business. Section 8–2–113(2)(a), C.R.S.1999. As such, it may be interpreted more liberally than an employer-employee noncompetition covenant. *See Centorr–Vacuum Industries, Inc. v. Lavoie,* 135 N.H. 651, 609 A.2d 1213 (1992).

As noted, a contract must be construed to give effect to the intent of the parties. Construction of a contract is a question of law that we review *de novo. See Safeco Insurance Co. v. Robertson, supra.*

Under the majority rule, absent a contractual provision to the contrary, a noncompetition covenant does not preclude a party from merely leasing property or loaning money to others engaged in a competing business. *See Riverview Floral, Ltd. v. Watkins,* 51 Wash.App. 658, 754 P.2d 1055, *amended by* 51 Wash.App. 658, 764 P.2d 1012 (1988); Annot., *Rendering Financial or Other Assistance to Another as Breach of Cove-*

*nant Not to Compete*, 1 A.L.R.3d 778, 1965 WL 13238 (1965). But, engaging in business under the guise of assistance to others is a breach of a noncompetition covenant, as is doing business through "dummy operators." *Riverview Floral, Ltd. v. Watkins, supra*, 51 Wash.App. at 662, 754 P.2d at 1058; *see Gold Messenger, Inc. v. McGuay, supra* (covenantors will not be allowed to do through others what they could not do directly).

■ It is undisputed here that Miller loaned several hundred thousand dollars to his relatives to get them started in the propane business, and leased them land for their offices. Nevertheless, the noncompetition covenant at issue does not prohibit the mere loaning of money or leasing of land, and its terms are not broad enough to cover such activities. *See Riverview Floral, Ltd. v. Watkins, supra.*

The noncompetition covenant, however, does prohibit Miller from owning any interest in, or working or consulting for, a company competing with All Seasons. With regard to ownership of a competing company, the trial court found no evidence that Miller owned any interest in either Hometown or D & J Leasing, or that he derived any benefit from either corporation.

Whether the noncompetition covenant was materially breached by Miller turned on whether his other activities—in pricing and ordering equipment for Hometown and D & J Leasing, and in assisting those companies in their start-up activities—constituted working or consulting, directly or indirectly, for an "enterprise which competes or which shall compete with" All Seasons. Characterizing its decision as "a close question," the trial court found that Miller's activities did not violate the agreement because they were uncompensated, of brief duration, and required no specialized knowledge.

We conclude that this determination must be reconsidered because the trial court considered irrelevant factors, and applied an incorrect legal standard in resolving the issue.

■ First, in determining that Miller's activities on behalf of purchaser's competitor did not constitute "work," the trial court observed that Miller had not received compensation. However, the definition of work is: "To exert effort; to perform, either physically or mentally." *Black's Law Dictionary* 1599 (7th ed.1999). Exertion of effort does not have to be compensated before it becomes work.

The noncompetition covenant contained a broad prohibition against work "in any manner whatsoever," not a prohibition against "employment" or another more specific term. Thus, under the plain language of the covenant at issue here, Miller was barred from doing any work for a competitor, whether Miller was benefited or not.

It is undisputed and the trial court found that, by pricing and ordering equipment, Miller exerted effort on behalf of Hometown and D & J Leasing apart from the mere loaning of money and the leasing of property.

The court also found there was no material breach by Miller based on additional specified factors which were: (1) the nonspecialized nature of Miller's activities and the fact that Hometown and D & J Leasing did not derive substantial benefit from them; (2) the short duration of the activities; and (3) the fact that the activities primarily benefited D & J Leasing, which was not purchaser's direct competitor. We conclude that most, if not all, of these factors were irrelevant and should not have been considered.

■ Again, the plain language of the noncompetition covenant prohibited Miller from doing any work for a competitor "directly or indirectly, in any manner whatsoever." This is much broader language than that contained in the noncompetition agreement at issue in *DBA Enterprises, Inc. v. Findlay, supra*, where a division of this court affirmed the trial court's finding of a material breach. Hence, under the very broad language agreed upon by the parties, it is irrelevant that someone else could have engaged in the activities in which Miller engaged because they were nonspecialized activities. The critical issue was whether Miller engaged in such activities.

■ Nor should the trial court have considered the lack of any substantial benefit to

Hometown and D & J Leasing. The proper test for determining whether a breach is material is to look at the substantial benefit that the *injured party* (purchaser) would have obtained from the fulfillment of the contract, not whether a third party has obtained a substantial benefit from the breach. *See DBA Enterprises, Inc. v. Findlay, supra.*

In addition, the trial court found that Miller's activities on behalf of Hometown and D & J Leasing were of short duration. Again, however, under the very broad language of the noncompetition covenant, any amount of work could constitute a material breach. The proper consideration was whether the purchaser would have obtained any substantial benefit if Miller had not worked for Hometown and D & J Leasing at all, and whether the purchaser can be adequately compensated in damages. *See DBA Enterprises, Inc. v. Findlay, supra.*

In finding no material breach of the covenant, the trial court also emphasized the fact that Miller's activities primarily benefited D & J Leasing. However, it is undisputed that D & J Leasing existed only to provide equipment to Hometown –equipment without which Hometown could not have competed with purchaser—and the trial court found that Hometown and D & J Leasing were "jointly owned and closely related corporations."

Because Miller was specifically prohibited from "indirectly" working or consulting for any "enterprise which competes or which shall compete" with All Seasons, we conclude the trial court erred in resolving the material breach issue based on the fact that Miller's activities primarily benefited D & J Leasing.

Miller also testified at trial, and the defendants assert on appeal, that most of Miller's activities related to the setting up of a propane business in an unrestricted part of Grand Junction, rather than in Delta, and therefore were not in violation of the agreement. However, we are unable to discern from the court's order which activities, if any, were related to the Grand Junction location.

Nor can we say on this record that the court's ruling is justified by the assumption that it simply resolved the credibility issues in favor of Miller. In making its credibility determinations, the trial court specifically stated that Miller's testimony contained "numerous inconsistencies" and that "his dissembling and outright falsehoods have assumed presidential proportions." The court added that Miller's "credibility [was] highly suspect at best."

In summary, we conclude that the trial court's finding of no material breach by Miller was based, in significant part, on the consideration of irrelevant or impermissible factors and, further, that the court failed properly to assess the issue of material breach in light of the particular language used in the parties' agreement in this case.

Accordingly, the judgment cannot stand and the matter must be remanded for reconsideration of the issue of material breach. *See Centorr–Vacuum Industries, Inc. v. Lavoie, supra* (concluding that trial court misinterpreted noncompetition covenant, and remanding case for determination whether defendant's actions "indirectly" assisted the competitor). The award of costs and attorney fees also must be vacated.

On remand, if the trial court determines that Miller did materially breach the parties' noncompetition covenant, it should then consider: (1) whether the defendants are liable under any of the remaining claims; and (2) whether purchaser incurred any damages. If the court determines that Miller did not materially breach the noncompetition covenant, it may reinstate the award of costs and attorney fees, and enter such other orders as it deems proper.

The judgment is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion. The award of costs and attorney fees is vacated pending disposition on remand.

Chief Judge HUME and Judge MARQUEZ concur.