(32 P.3d 1205)

No. 86,414

JENSEN INTERNATIONAL, INC., J. B. JENSEN, and DONNA JENSEN, *Appellants*, v. GRADY KELLEY and JOE RINKENBAUGH, *Appellees*.

Opinion filed September 28, 2001.

*Michael James King* and *M. Jean Holmes*, of Winters, King & Associates, P.C., and *Douglas G. Ott*, of Hall, Levy, DeVore, Bell, Ott & Kritz, of Coffeyville, for appellants.

*Jim D. Garner*, of Coffeyville, and *Curt T. Schneider*, of Schneider Law Office, of Coffeyville, for appellees.

Before PIERRON, P.J., GERNON, J., and BUCHELE, S.J.

GERNON, J.: Jensen International, Inc., (Jensen International) appeals the trial court's rulings which held that former employees and shareholders of Jensen International, Grady Kelley and Joe Rinkenbaugh, had not breached a covenant not to compete and that Jensen International had breached the agreement by refusing to make timely payments.

The principal shareholders of Jensen International are J. B. and Donna Jensen. Kelley, Rinkenbaugh, and James Jensen II executed a formal settlement agreement and mutual release with J. B. and Donna Jensen. This agreement settled all claims between the parties. Under the agreement, Kelley, Rinkenbaugh, and James Jensen II sold their Jensen International stock for $500,000 back to the Jensens and signed a covenant not to compete. Additionally, the Jensens were to make payments of $15,000 to each of them on January 2, 1998, 1999, 2000, 2001, and 2002, in a total amount of $225,000.

The agreement further provided:

"12. A Party shall be in default of this Agreement upon (i) the failure to timely make any payment required by the terms of this Agreement, time being of the essence; or (ii) the failure to strictly comply with any term or provision of this Agreement or the term or provision of any other document referenced herein, time being of the essence. Upon the occurrence of a default, and if a judicial proceeding is necessary to enforce the terms of this Agreement, the Party relying on this Agreement and successfully defeating such action or asserting any right under this Agreement shall be entitled to recover its reasonable attorney's fees, costs and expenses incurred as a result of such proceeding."

The covenant not to compete had the following provisions:

"I. The undersigned will not, either directly or indirectly, alone or with others, engage in or have any ownership interest in a foundry business or other type of business which produces the same type of product or service as Jensen International [or the Jensen affiliated companies] within a 50 mile radius of Coffeyville, Kansas for a period of two years following the execution of this Agreement. Nothing in this agreement shall limit Grady Kelly's [sic] right to be shareholder in Economy Co.

"II. That further, the undersigned will not aid or assist any person, business or entity in entering into or conducting the business of a foundry, or other type of business which produces the same type of product or service as Jensen International or the Jensen-affiliated cos. within a 50 mile radius of Coffeyville, Kansas for a period of two years following the execution of this Agreement.

"III. The undersigned will not contact directly or indirectly any customer of Jensen International, Jencast Products, Jensen Brother Manufacturing, Service Pipeline and Supply, Hy Jack Company, Kelly Manufacturing, hereinafter 'Jensen' to engage in competition for the business of said customers for two (2) years from the date of the execution of this Agreement. For the purposes of this paragraph, the term 'Customer' shall be defined as any person, business or entity who has purchased or acquired goods or services from 'Jensen' within six (6) months from the date of this Agreement.

"IV. The undersigned will not aid or assist any person, business or entity in contacting directly or indirectly any customer of 'Jensen' for a period of two years following the execution of this Agreement."

The covenant also provided:

"VI. If any of the undersigned breach, or threaten to commit a breach of any of the Restricted Covenants, 'Jensen' shall have any and all rights and remedies which shall be in addition to, and not in lieu of, any other rights and remedies available to 'Jensen' at law or in equity:

"(a) Upon the judicial determination of a breach of this agreement, Jensen shall have the right to cancel any additional payments due and owing or accrued pursuant to the Settlement Agreement and General Mutual Release executed by the Parties contemporaneously herewith; provided, however, that such cancellation shall occur only to the specific party who is determined to be in breach of this agreement. . . .

. . . .

"VII. Upon the occurrence of a default, as the same is defined in the Settlement Agreement and Mutual Release, and such default is not immediately cured, time being of the essence, then the Restrictive Covenants enumerated herein shall cease, and shall be of no further effect whatsoever, and Grady Kelly [sic], James Jensen, II, and Joe Rinkenbaugh shall be released from all Restrictive Covenants contained herein."

Jensen International, J. B. Jensen, and Donna Jensen (collectively, Jensen) filed a petition for declaratory relief on January 5, 1999, stating Kelley and Rinkenbaugh breached the agreement and covenants and Jensen was not required to make any further payment.

The following facts are not controverted: Atlas Steel Products (Atlas Steel) was incorporated in May 1998 by Kelley, Rinken-

baugh, and their wives. At the same time, Kelley, Rinkenbaugh, and Alva Kimrey formed KRK Building, Inc., (KRK) located in Vinita, Oklahoma. KRK purchased property in Vinita, Oklahoma, and leased it to Atlas Steel, Precision Turning, a machine shop owned by Kimrey, Gary's Welding, and Coca-Cola. The parties agree the location of business of Atlas Steel, Precision Turning, and Gary's Welding is within the 50-mile radius of Coffeyville.

Kelley and Rinkenbaugh filed a motion for partial summary judgment in March 1999, claiming Jensen violated the agreement by failing to make payments in January 1999. By a letter decision dated May 4, 1999, the trial court decided that Jensen was without authority or power to suspend the required payments to Kelley and Rinkenbaugh, since there was no judicial determination of their breach under paragraph VI(a) of the covenant and that Kelley and Rinkenbaugh were released from the restrictive covenants.

After a trial, the district court found that Kelley and Rinkenbaugh did not violate the terms and conditions of the agreement or the covenant not to compete.

Jensen appeals.

## Was Atlas Steel a Competitor of Jensen?

Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Kansas Gas & Electric Co. v. Will Investments, Inc.*, 261 Kan. 125, 128, 928 P.2d 73 (1996).

Furthermore, when a trial court makes a negative factual finding, the party challenging that finding must prove arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice because the negative finding signifies the failure of the party upon whom the burden of proof was cast to sustain it. *Thomason v. Stout*, 267 Kan. 234, 238, 978 P.2d 918 (1999).

Jensen argues Kelley and Rinkenbaugh, through Atlas Steel, sold the same products and services as Jensen International, in violation of the agreement. The trial court found that Atlas Steel did not fabricate steel or metal products as alleged by Jensen. The court stated:

"Plaintiff fabricates steel for its own product line and those of customers. Plaintiff defines fabrication as when you 'take the raw steel and bend it, shear it, cut it, punch it. In someway you change its shape in someway to be moved to a weld shop *to be attached together in some type of form of another shape.*' (Emphasis added) Mr. Kelly [*sic*] testified that Atlas cuts, breaks, shears raw steel for customers, but that they provide this service, as part of raw steel sales whereas Jensen provides this service as part of the fabrication process which involves more than merely cutting, breaking and shearing. Mr. Kelly [*sic*] testified that his definition of steel fabrication was the 'joining of two or more parts together.' It appears that the parties have identical definitions of the process of 'fabrication' even though Mr. [Jensen]'s later attempted to modify his definition to coincide with his [counsels'] questions by omitting the underlined part of the definition above."

Jensen claims the trial court erred in using the dictionary definition of "fabrication" instead of definitions of the expert witnesses at the trial. However, the court acknowledged "the parties have identical definitions of the process of 'fabrication,' " although Jensen's witness attempted to modify the definition. The court cited the dictionary definition under the premise that "if the court assumes for the sake of argument that plaintiff's definition omits the underlined portion the court would arrive at the same conclusion."

In addition to Kelley's testimony, Dennis Wieneke, a product engineer at Jensen International, testified that Jensen International made "steel components for construction type companies, whether it's gussets, bolts, items like that," as well as "pump jacks and truck beds," as part of "a fabrication and machine shop operation." A former weld shop foreman for Jensen International, Charles Bently, testified he was "responsible for fabrication welding, painting, and assembling of everything in the building" and "[g]etting the product out the door."

We conclude there is substantial competent evidence to support the trial court's finding that Atlas Steel did not sell or provide the

same product or service as Jensen International, and the trial court did not err in holding there was no violation of the covenant not to compete.

### Did KRK Aid a Competitor of Jensen?

Jensen argues Kelley and Rinkenbaugh, through KRK, aided and assisted Precision Turning and Gary's Welding, which were competitors of Jensen International.

KRK leased property to Precision Turning and Gary's Welding in Vinita, Oklahoma. Precision Turning is a machine shop, and Gary's Welding is a welding shop. They are in direct competition with Jensen International. The critical issue is whether Kelley and Rinkenbaugh aided or assisted Precision Turning and Gary's Welding in violation of the covenant not to compete.

Jensen notes the following actions of Kelley and Rinkenbaugh as evidence of aiding and assisting the competitors: (1) helping Precision Turning relocate to Vinita, (2) leasing property to Precision Turning, (3) deferring rent to Precision Turning, (4) aiding Precision Turning in banking transactions and shop management, and (5) referring work to Gary's Welding.

The main argument of Jensen under this issue is that Kelley and Rinkenbaugh, through KRK, leased property to Precision Turning and Gary's Welding. Jensen relies on *Dowd v. Bryce,* 95 Cal. App. 2d 644, 213 P.2d 500 (1950), which held the vendors were prohibited from leasing land within the restricted area for the time period under the covenant not to compete.

On the other hand, Kelley and Rinkenbaugh cite *Riverview Floral v. Watkins,* 51 Wash. App. 658, 754 P.2d 1055 (1988). *Riverview* stated:

"Absent a contractual provision to the contrary, a party who covenants not to compete in a particular business is not precluded from merely leasing property or loaning money to others engaged in that business. The covenantor is precluded from having a connection with the business or deriving a profit therefrom. [Citations omitted.]" 51 Wash. App. at 661-62.

The *Riverview* court specifically rejected the "minority" view taken in *Dowd,* noting criticism of the *Dowd* rationale that the act

of leasing creates a link in the chain of competition. 51 Wash. App. at 661 n.1.

*Midlands Transp. Co. v. Apple Lines, Inc.*, 188 Neb. 435, 197 N.W.2d 646 (1972), dealt with a company violating a covenant not to compete by leasing trucks to a competing common carrier. The court noted the appellant premised its argument on the rationale of *Dowd,* and it engaged in an extensive discussion of *Dowd*:

> " ' "There can be hardly any doubt that the decision in *Dowd v. Bryce* . . . is correct under the circumstances. The inclusion in the restrictive covenant of the provision against selling other property to future competitors shows the intention of the parties as to the scope of the prohibited activities clearly. . . . Thus, it has been held generally that there is no breach of the covenant where the covenantor *merely lends money to a person engaged in a similar business, or where . . . the covenantor sells land to another who erects a building thereon for the purpose of carrying on the business.* On the other hand there is a breach of the covenant where the covenantor engages in the business as a partner, *organizes a competing corporation, or otherwise engages in a similar business under corporate form, or takes active interest in the encouragement of the business in other ways.*" ' " 188 Neb. at 441-42.

The court concluded: "It appears that the majority and proper rule is that the mere leasing of personal property, without proof of other circumstances, by a covenantor to an existing competitor of a promisee, does not constitute a breach of a general covenant not to compete." 188 Neb. at 441.

Here, KRK leased its building to Atlas Steel, Precision Turning, and Gary's Welding. Precision Turning and Gary's Welding were engaged in the same business as Jensen International; however, Kelley and Rinkenbaugh were not partners with Precision Turning or Gary's Welding. They did not take active roles in the management of these businesses or share profits. Under the holding and rationale in *Midlands,* as well as the lack of an explicit provision prohibiting leasing of property in the covenant, leasing of the building to Precision Turning and Gary's Welding is not a violation of the covenant not to compete.

The rationale in *Midlands* is reasonable from a common sense approach and an economic view of these agreements.

### Jury Trial

Jensen argues it had the right to a jury trial under the Kansas

Constitution Bill of Rights § 5 and K.S.A. 60-257, and that the trial court erred in denying it because it was a declaratory judgment action.

The Kansas Constitution Bill of Rights § 5 provides: "The right of trial by jury shall be inviolate." K.S.A. 60-257 provides: "The procedure for obtaining a declaratory judgment pursuant to article 17 of this chapter, shall be in accordance with this article, and the right to trial by jury may be demanded under the circumstances and in the manner provided in K.S.A. 60-238 and 60-239."

K.S.A. 2000 Supp. 60-238 provides in pertinent part:

"(a) . . . The right of trial by jury as declared by section 5 of the bill of rights in the Kansas constitution, and as given by a statute of the state shall be preserved to the parties inviolate.

"(b) . . . Any party may demand a trial by jury of any issue triable of right by a jury by: (1) Serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue; and (2) filing the demand as required by K.S.A. 60-205 and amendments thereto. Such demand may be indorsed upon a pleading of the party."

In pertinent part K.S.A. 60-239(a) provides:

"When trial by jury has been demanded as provided in K.S.A. 60-238, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless . . . the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the constitution or statutes."

The right to a jury trial in a civil proceeding in Kansas is not absolute and refers to that right as it existed under the common law. At common law and under the Kansas Constitution, a party is not entitled to a trial by jury as a matter of right in a suit in equity. *In re Petition of City of Moran*, 238 Kan. 513, 517-18, 713 P.2d 451 (1986). The *Moran* court cited the statutory procedure for obtaining a jury trial in a declaratory judgment case (K.S.A. 60-257), and then stated:

"[T]he right to a jury trial in an action for a declaratory judgment is not absolute. It must first be determined whether the declaratory judgment action is equitable in nature or one at common law. In determining whether the action for a declaratory judgment is one in equity, the test is whether the essential nature of the

action is grounded on equitable rights and is one in which equitable relief is sought." 238 Kan. at 518.

In an action construing a gas purchase contract, the Supreme Court held that the trial court's denial of the request for a jury trial was not reversible error. *Pan American Petroleum Corporation v. Cities Service Gas Co.*, 191 Kan. 511, 518-19, 382 P.2d 645 (1963). The *Pan American* court noted the fact that an action was instituted as a declaratory judgment could in no way detract from the right to a jury trial if the right otherwise existed and further explained:

"However, we do not believe the issues as framed by the pleadings present a question for a jury trial for two reasons. Basically, the action involves the construction of a contract or contracts. As we have previously stated, once the trial court had construed the provision for determining the reasonable price for gas 'based on and compared with the price for gas then being paid by other purchasers in the field under similar contracts and conditions,' it had next to consider what contracts were admissible for comparison. Once the court determined the contracts which were admissible for comparison, there was nothing remaining to be done but to place such contracts beside the contract in controversy and construe them together. . . .

. . . .

"Neither is this action for, nor could it be an action for, the recovery of money. The plaintiff could not recover a money judgment in this action. Neither could it have a finding or conclusion made which would form the basis for a money judgment." 191 Kan. at 518-19.

Jensen prayed in its petition that it not be required "to make any further payments to defendants pursuant to the Settlement Agreement and Mutual Release" and the covenant not to compete "be specifically enforced requiring defendants to refrain from all further association with the competing companies." The issue is construction of the agreement and the covenants, and there was no monetary damages involved. The trial court did not err in denying the requested jury trial.

## Payments

The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. *City of Topeka v. Watertower Place Dev. Group*, 265 Kan. 148, 152-53, 959 P.2d 894 (1998).

Kelley and Rinkenbaugh filed a motion for partial summary judgment, claiming Jensen violated the agreement by failing to make a payment in January 1999. The trial court held Jensen was without authority or power to suspend the required payments to Kelley and Rinkenbaugh since there was no judicial determination of their breach under the paragraph VI(a) of the covenant and they were released from the restrictive covenants.

It is uncontroverted that Jensen did not make a payment scheduled on January 2, 1999. Jensen's counsel sent a letter in July 1998, stating Jensen would make no further payments to Rinkenbaugh under the settlement agreement until and unless he came into compliance with the agreement. Jensen's counsel also notified Kelley in December 1998 of his client's intention to terminate any payments due him.

Jensen does not dispute the above facts; instead it argues that it is absurd to require a nonbreaching party to continue paying under an agreement, where there is evidence of a breach, until such time as a judgment is entered. Unfortunately for Jensen, the agreement is clear that "[u]pon the judicial determination of a breach of this agreement, Jensen shall have the right to cancel any additional payments due." The language of the agreement is quite plain in specifically requiring the judicial determination of a breach, not alleged evidence of a breach, by Kelley and Rinkenbaugh.

We find no error and affirm the rulings of the trial court in their entirety.